UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID ADAMS,

                    Plaintiff,                         Case No. 2:23-cv-47

v.                                                     Honorable Robert J. Jonker

JAY POUPARD et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against the defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley from this suit. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, Christoff, Hammel, Taskila, Russell, and Poupard, under the PLRA, the Court is required to dismiss any inmate action brought under federal law if the

complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Hammel, Russell, and Poupard for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim related to the denial of deodorant; First Amendment retaliation claims against Defendants Paakola, Capello, Mattila, Turunen, Hewson, Smith, Christoff, and Taskila; First Amendment claims for interference with Plaintiff's access to the courts; Fourteenth Amendment due process claims; and all official capacity claims. Plaintiff's Eighth Amendment claims against Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, Christoff, and Taskila related to the provision of contaminated food, and his First Amendment retaliation claims against Defendants Sullivan, Watt, and Gagnon remain in the case.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues twenty-one Defendants. Specifically, Plaintiff sues Michigan State Police Lieutenant Commander Jay Poupard, AMF Warden Kris Taskila, MDOC Grievance Section Manager Richard Russell, AMF Assistant Deputy Warden R. Horrocks, Mental Health Professional Dale Harju, Mental Health Professional Mike Beaudoin, Step 1 & 2 Grievance Coordinator T. Hamel, "Propertyman" Unknown Coppler, Chaplain

2

Unknown Snyder, Correctional Officer Unknown Hewson, Correctional Officer Unknown Watt, Sergeant Unknown Sullivan, MDOC Mental Health Service Director Tom Osier, Correctional Officer Unknown Paakola, Correctional Officer Paul Capello, Correctional Officer Unknown Smith, Correctional Officer Unknown Mattila, Correctional Officer Unknown Christoff, Correctional Officer Unknown Turunen, Correctional Officer N. Beesley, and Correctional Officer Unknown Gagnon.

Plaintiff alleges that, on January 18, 2022, and on several occasions in March and April 2022, Defendant Paakola "maliciously & sadistically targeted [Plaintiff] with an 'injuriously rancid-contaminated' food," causing Plaintiff to burn and itch. (ECF No. 1, PageID.8, 33, 38, 42, 48.) Plaintiff alleges that, on many of these occasions, Defendant Paakola made comments such as, "The burn and itch is real," (*id.*, PageID.18), "Adams[,] if you can[']t stand the burning & itching then kill yourself or starve until we transfer you but your grievances obviously can[']t help you," (*id.*, PageID.33), and "I bet [you're] going to itch & burn after eating this meal or you can just starve yourself[,] Adams," (*id.*, PageID.37). Plaintiff also makes similar allegations against Defendants Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff. He alleges that these Defendants each served Plaintiff "'injurious rancid-contaminated' food," throughout March and April 2022, and made comments indicating that they were providing Plaintiff with contaminated food with either the knowledge or purpose of causing Plaintiff pain. (*Id.*, PageID.14, 15, 18, 20–26, 31–50.)

Plaintiff reported these incidents of contaminated food to Defendant Hammel, but Defendant Hammel did not respond. (*Id.*, PageID.14, 15, 18, 20– 26, 31–50.) Plaintiff also reported some of these incidents to Defendants Taskila and Russell; however, Defendants Taskila and Russell did not correct the problem. (*Id.*, PageID.8, 14, 15, 27.) On February 7, 2022, Plaintiff

forwarded a complaint to Defendant Poupard of the Michigan State Police, regarding four correctional officers, including Defendant Turunen, who had "targeted the plaintiff with the 'injurious rancid-contaminated' food, causing him 'serious physical injury." (*Id.*, PageID.10.) Defendant Poupard did not respond. (*Id.*)

In addition to Plaintiff's allegations of "injurious rancid-contaminated food," Plaintiff alleges that, on February 19, 2022, Defendant Sullivan denied Plaintiff's phone access after Plaintiff filed an unidentified grievance against one of Defendant Sullivan's colleagues. (*Id.*, PageID.11.) Defendant Sullivan stated: "I heard you were writing grievances Adams – so no phone, (for you), when I[']m down here." (*Id.*) Plaintiff also alleges that, in the course of providing Plaintiff with contaminated food, Defendant Watt told Plaintiff, "Adams[,] as long as you're writing grievances and complaints you'll be burning and itching," (*id.*, PageID.20), and Defendant Gagnon stated, "Adams[,] you shouldn't have wrote [sic] that grievance against 'Sullivan' – now deal with the pain." (*Id.*, PageID.22).

Plaintiff also alleges that he has suffered from clinical depression for years, but that staff do not accurately log Plaintiff's "hygientical [sic] behavior pattern" so as to hide the symptoms of Plaintiff's depression and deny Plaintiff mental health treatment. (*Id.*, PageID.27–28.) In December 2021, Plaintiff asked Defendant Harju for "psychiatric medicative treatment," but Defendant Harju told Plaintiff to "be patient waiting on a response." (*Id.*, PageID.28.) On March 23, 2022, in response to Plaintiff's request for treatment, Defendant Harju stated, "Adams[,] [you're] a bug, we all know you need meds but [you're] being punished." (*Id.*) When Plaintiff further pleaded with Defendant Harju, Defendant Harju replied, "I don[']t care[,] Adams. Meds are a reward. I have to go now." (*Id.*) Plaintiff reported the situation to Defendant Beaudoin, (*id.*, PageID.29), but Defendant Beaudoin denied Plaintiff's grievance, (ECF No. 1-2, PageID.119).

Defendant Beaudoin also told Plaintiff that Plaintiff would not get medication for his depression, that Plaintiff was being punished, and that Plaintiff should stop writing grievances if he does not want his food tampered with. (ECF No. 1, PageID.29–30.) Plaintiff appealed the denial of his grievance; however, Defendant Osier denied the same. (*Id.*, PageID.30–31; ECF No. 1-2, PageID.120, 122.)

On June 10, 2022, Defendant Beesley conducted a strip search of Plaintiff; however, Plaintiff did not comply when asked to bend over and spread his buttocks. (ECF No. 1, PageID.52.) Defendant Beesley requested authorization from Defendant Horrocks to use "chemical weapons" against Plaintiff. (*Id.*, PageID.53.) Defendant Horrocks agreed, allowing Defendant Beesley to spray Plaintiff "from head to feet." (*Id.*) Defendant Coppler then denied Plaintiff his property, "so that he would not have access to his medical therapeutic cre[am] and medical shampoo," which Plaintiff claims would have provided relief. (*Id.*, PageID.53–56.) The kite responses attached to Plaintiff's complaint indicate that healthcare staff had discontinued Plaintiff's orders for medicated cream and shampoo. (ECF No. 1-6, PageID.131.)

Plaintiff further claims that he was denied access to the AMF law library for eight months while in solitary confinement. (*Id.*, PageID.58.) He was also denied legal photocopies, a copy of an injunction related to "100% organic food," and the ability to purchase a "durable financial power of attorney" form. (*Id.*, PageID.59–60.) Plaintiff reported his complaints to Defendants Horrocks and Taskila, but they found "no problem with what Plaintiff [was] being subject[ed] to." (*Id.*, PageID.60.)

Between May 31, 2022, and June 23, 2022, non-party "Staffm[a]n" Lanctot incorrectly processed Plaintiff's request for legal photocopies, resulting in a greater charge than requested. (*Id.*, PageID.61.) Defendant Snyder refused to "correct the obvious wrong." (*Id.*) Plaintiff reported

this to Defendants Horrocks and Taskila, but they did not refund Plaintiff the copying charges. (*Id.*, PageID.62.)

Despite multiple requests, Defendant Coppler denied Plaintiff's requests for deodorant from December 1, 2021, until June 10, 2022. (*Id.*, PageID.63.) Non-party Nurse Duquette responded to Plaintiff's kite, informing Plaintiff that he could purchase deodorant from the prisoner commissary list if he chose to do so, but that "[d]eodorant is not a necessity." (ECF No. 1-7, PageID.135.) Plaintiff also sent a request to Defendant Taskila regarding his request for deodorant, but Defendant Taskila did not respond. (*Id.*, PageID.63–64; ECF No. 1-8. PageID.136.)

Finally, AMF confiscated Plaintiff's envelopes without replacing them. (ECF No. 1, PageID.65.) Plaintiff reported this to Defendant Taskila, but Defendant Taskila did not correct the issue. (*Id.*, PageID.66.)

Plaintiff seeks money damages and injunctive relief. (*Id.*, PageID.67.)

## II.    Misjoinder

Plaintiff brings this action against twenty-one Defendants, alleging that he was harmed on dozens of occasions at AMF, from December 2021 to June 2022. Plaintiff acknowledges that several of his claims are unrelated, but nonetheless seeks to bring them in a single lawsuit. (*See* ECF No. 1, PageID.7.) Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action

6

as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . .

7

are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001)

8

(declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to deny Plaintiff's request to proceed on "unrelated claims" (ECF No. 1, PageID.7) and reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's complaint took place on January 18, 2022. (ECF No. 1, PageID.8.) On that date, Defendant Paakola provided Plaintiff with "'injuriously rancid-contaminated' food," causing Plaintiff to burn and itch. (*Id.*) The manner in which Plaintiff presents his factual allegations supports identifying Defendant Paakola as the appropriate starting point for the joinder analysis. By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff brings similar claims against Defendant Paakola arising out of events throughout March and April 2022. (*Id.*, PageID.33, 38, 42, 48.) Plaintiff may join all claims he has against Defendant Paakola and all claims against others arising out of this same series of transactions or occurrences. Viewing Plaintiff's complaint indulgently and without deciding whether the events

9

are in fact related, this includes Plaintiff's claims against Defendants Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff for allegedly providing Plaintiff with "'injurious rancid-contaminated' food," throughout March and April 2022, (*id.*, PageID.14, 15, 18, 23–26, 31–50), Plaintiff's claims against Defendants Sullivan, Watt, and Gagnon for retaliation, (*id.*, PageID.11, 20, 22), and Plaintiff's claims against Defendants Hammel, Taskila, Russell, and Poupard, all of whom were made aware of Plaintiff's various complaints, but did not respond or otherwise correct the problems, (*see generally id.*).

However, no matter how liberally the Court construes the complaint, Plaintiff has not stated at least "one claim against each [remaining] defendant [that] is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Accordingly, the Court concludes that Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley are misjoined.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend*

*Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint, describing events that took place from December 2021 through June 2022, provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley, and Plaintiff has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley from this suit, dismissing

Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is cautioned that the failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

12

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff indicates that he brings claims against Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, Christoff, Hamel, Taskila, Russell, and Poupard for Eighth Amendment deliberate indifference, (*see generally* ECF No. 1), and First Amendment retaliation, (*id.*, PageID.11, 32, 39, 44), and against Defendant Taskila for First Amendment interference with access to the courts, (*id.*, PageID.58, 60, 62, 66), and Fourteenth Amendment violation of due process, (*id.*, PageID.62). Plaintiff also brings claims against Defendants Poupard and Taskila in their respective official capacities. (*Id.*, PageID.2.)

A.    **Eighth Amendment – Contaminated Food**

1.    **Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff**

Plaintiff alleges that Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff each provided Plaintiff with "injuriously rancid-contaminated

13

food," knowing that Plaintiff would either suffer itching, burning, and pain as a result or be forced to go without food.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

With its prohibition against cruel and unusual punishments, the Eighth Amendment also prohibits conduct by prison officials that results in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). This includes "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment claim for unconstitutional conditions of confinement, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious

14

harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Here, taking Plaintiff's allegations as true as is required at this stage, Plaintiff sufficiently alleges that Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff each provided Plaintiff with contaminated food with the purpose of causing Plaintiff pain or forcing Plaintiff to go without food on multiple occasions, in violation of Plaintiff's Eighth Amendment rights. As the Sixth Circuit has concluded, there can be no question that prisoners may not—consistent with the Eighth Amendment—be deprived of food. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (finding that an inmate "had a clearly established right not to be deprived of food and water"). "Depriving an inmate of food or serving him contaminated food states a claim for a violation of the Eighth Amendment." *Thompson v. Michigan Dep't of Corr.*, No. 99-2076, 2000 WL 1597844, at *2 (6th Cir. Oct. 20, 2000). Accordingly, Plaintiff's Eighth Amendment claims against Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff related to the provision of contaminated food will not be dismissed on screening.

### 2. Defendants Hammel, Taskila, Russell, and Poupard

Plaintiff alleges that he informed Defendants Hammel, Taskila, Russell, and Poupard that he was being served contaminated food, but that these Defendants failed to correct the problem or otherwise protect Plaintiff from the offending Defendants. Plaintiff identifies Defendant Taskila as the AMF Warden and Defendant Hamel as the AMF "Step 1 & 2 Grievance Coordinator." (ECF No. 1, PageID.2–3.) He identifies Defendant Russell as the "Manager, Grievance Section," serving

15

at the MDOC Office of Legal Affairs in Lansing, Michigan, and he identifies Defendant Poupard as a Lieutenant Commander of the Michigan State Police, located in Dimondale, Michigan. (*Id.*)

### a.    Defendants Hammel, Russell, and Poupard

As an initial matter, the United States Court Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). There must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure). Accordingly, Plaintiff cannot state a claim against Defendants Hamel and Russell, who are identified only in connection with their respective roles in the prison grievance process. Plaintiff has provided no factual allegations to plausibly suggest that either Defendant was actively involved in the provision of contaminated food to Plaintiff or that their respective roles transcended their responses—or lack thereof—to Plaintiff's grievances.

Likewise, Plaintiff cannot state a claim against Defendant Poupard, who is not alleged to have worked within AMF or even the MDOC. It cannot be said that Defendant Poupard, a Michigan State Police Lieutenant Commander, engaged in any intentional act that caused

16

Plaintiff's injuries or that Defendant Poupard had any opportunity to take reasonable steps within AMF to prevent harm.

Accordingly, for these reasons, the Court will dismiss Plaintiff's claims against Defendants Hamel, Russell, and Poupard.

### b.      Defendant Taskila

As for Plaintiff's claims against Defendant Taskila, it is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

17

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). "[A]n after-the-fact approval of an officer's conduct cannot logically be the moving force behind the constitutional violation." *Sherrod v. Williams*, No. 3:14-CV-454, 2019 WL 267175, at *25 (S.D. Ohio Jan. 15, 2019) (citing *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013)).

Here, viewing Plaintiff's complaint indulgently, Plaintiff alleges that Defendant Taskila affirmatively failed to protect Plaintiff from the offending officers, despite being aware that the officers were continually harming Plaintiff in providing Plaintiff with contaminated food. In its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

18

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, Plaintiff has alleged sufficient facts, taken as true, that state a claim for failure to protect against Defendant Taskila. Plaintiff alleges that he told Defendant Taskila of the repeated actions of Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff over the course of months, but that Defendant Taskila refused to take any action to protect Plaintiff from repeated harm by these Defendants. Accordingly, on initial review, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Taskila for failure to protect Plaintiff from the harm caused by the provision of contaminated food.

## B.    Eighth Amendment – Denial of Deodorant

Plaintiff also claims that he had told Defendant Taskila that he was being denied free deodorant, but that Defendant Taskila did not respond to Plaintiff's request. (ECF No. 1, PageID. PageID.63–64; ECF No. 1-8. PageID.136.) Plaintiff claims that this too violates Plaintiff's Eighth Amendment rights.

As discussed above, the Eighth Amendment is concerned only with the denial of the "minimal civilized measure of life's necessities," such as "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 347–48 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

Deodorant is not included among the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *James v. O'Sullivan*, 62 Fed. Appx. 636, 639 (7th Cir. 2003) (holding

that the denial of a comb, deodorant and cleaning supplies cannot be said to have jeopardized a prisoner's health); *Johnson v. Mackie*, No. 1:17-cv-200, 2017 WL 1190553, at *3 (W.D. Mich. Mar. 31, 2017) (holding that the prisoner's Eighth Amendment claim for the denial of deodorant was frivolous); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *5 (W.D. Mich. July 19, 2010) (same); *Mitchell v. Kalamazoo Cnty. Sheriff's Dept.*, No. 1:14-cv-824, 2014 WL 7330974 at *6 (W.D. Mich. Dec. 19, 2014) ("The jail's failure to provide additional free items, such as deodorant, body lotion, wash cloths, underwear and socks does not constitute the denial of the 'minimal civilized measure of life's necessities.'"). Plaintiff does not allege that his ability to wash and keep himself clean was impaired in any way, and the use of deodorant does not improve or impair cleanliness; its usefulness is merely cosmetic. Plaintiff's Eighth Amendment claim that he was deprived of free deodorant therefore fails to state a claim and will be dismissed.

### C.      First Amendment – Retaliation

In addition to his Eighth Amendment claims, Plaintiff claims that "retaliation appears to be the motive" for many of Defendants' actions. (*See, e.g.*, ECF No. 1, PageID.14.) He specifically alleges that Defendant Sullivan denied Plaintiff's phone access after Plaintiff filed a grievance against one of Defendant Sullivan's colleagues, saying, "I heard you were writing grievances Adams – so no phone, (for you), when I[']m down here." (ECF No. 1, PageID.11.) He also claims that Defendants Watt and Gagnon each told Plaintiff that they were providing Plaintiff with contaminated food as a result of Plaintiff having filed grievances against Defendant Sullivan. Plaintiff claims that Defendant Watt told Plaintiff, "Adams[,] as long as you're writing grievances and complaints you'll be burning and itching," (*id.*, PageID.20), while Defendant Gagnon stated, "Adams[,] you shouldn't have wrote [sic] that grievance against 'Sullivan' – now deal with the pain," (*id.*, PageID.22).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As against Defendants Sullivan, Watt, and Gagnon, Plaintiff has set forth sufficient facts to satisfy all three elements of a First Amendment retaliation claim. He has pled that he engaged in protected conduct by filing a grievance against unidentified AMF staff and against Defendant Sullivan, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); that he was subjected to adverse actions sufficient to deter a person of ordinary firmness from exercising his constitutional rights through the denial of phone use and the provision of contaminated food; and that such adverse actions by Defendants Sullivan, Watt, and Gagnon were motivated retaliatory animus.

Plaintiff however fails to state a claim for First Amendment retaliation against the remaining Defendants. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). But "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening.]" (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation with respect to the remaining Defendants. He has not presented any facts from which the Court could infer that the majority of the remaining Defendants were aware of any grievances or petitions that Plaintiff had filed, and he certainly has not provided the Court with factual allegations that would plausibly suggest that any other Defendant engaged in an adverse action against Plaintiff because of Plaintiff's protected activity. Plaintiff's speculative allegation fails to state a claim; therefore, any First Amendment retaliation claims against the remaining Defendants will be dismissed.

### D.    First Amendment – Access to the Courts

Plaintiff alleges that Defendant Taskila was aware that Plaintiff was being denied access to the law library, denied legal photocopies, denied a copy of an injunction related to "100% organic food," and denied the ability to purchase a "durable financial power of attorney" form, (*id.*, PageID.58–60), but found "no problem with what Plaintiff [was] being subject[ed] to," (*id.*, PageID.60). He also claims that Defendant Taskila refused to refund the amount that Plaintiff was overcharged for legal photocopies, (*id.*, PageID.62–63), or correct the issue of Plaintiff's confiscated envelopes, (*id.*, PageID.66). Not only has Plaintiff alleged nothing more than a failure to act by Defendant Taskila, which is insufficient to state a claim under § 1983, *see Grinter*, 532

F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888, but Plaintiff has not set forth

sufficient facts to plausibly suggest an underlying claim for denial of access to the courts.

It is well established that prisoners have a constitutional right of access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of

legal information for prisoners. *Id*. at 817. The Court further noted that in addition to law libraries

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper

and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996,

1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however,

without limit. To state a viable claim for interference with his access to the courts, a plaintiff must

show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168

F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead facts

that would plausibly suggest that the shortcomings in the prison legal assistance program or lack

of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual

injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions
> to slip-and-fall claims. The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to

23

> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Therefore, a plaintiff must plead facts that would demonstrate that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded" in a manner "sufficient to give fair notice to the defendant." *Id.* at 415–416. The predicate claim must "be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope," and "the remedy sought must itself be identified" and not otherwise available in a lawsuit that has not yet been brought. *Id.*; *see also Clark v. Johnston*, 413 F. App'x 804, 816 (6th Cir. 2011).

The Court cannot see how Plaintiff being overcharged for legal photocopies could implicate Plaintiff's access to the courts. Plaintiff also fails to provide this Court with any facts that would suggest that the access and items allegedly denied—whether it be the law library, a copy of an injunction, a form for a power of attorney, or envelopes—were connected to a direct appeal, habeas corpus application, or civil rights claim, as would trigger Plaintiff's right to access the courts. *Thaddeus-X*, 175 F.3d at 391. Plaintiff also fails to provide this Court with sufficient facts to meet the element of actual injury, in that he has not described any nonfrivolous legal claim

24

that has been frustrated or impeded by Defendant Taskila's actions. *See Christopher*, 536 U.S. at 415–16. For each of these reasons, the Court will dismiss Plaintiff's claims against Defendant Taskila for denial of Plaintiff's access to the courts.

### E.    Fourteenth Amendment – Due Process

As discussed above, Plaintiff claims that, after being informed that Plaintiff was overcharged for legal photocopies, Defendant Taskila refused to refund Plaintiff the copying charges. (ECF No. 1, PageID.61–62.) Plaintiff also claims that Defendant Taskila refused to replace Plaintiff's envelopes upon being informed that the envelopes had been confiscated. (*Id.*, PageID.65.) In Plaintiff's complaint, he references alleged violations of his Fourteenth Amendment rights and, therefore, in addition to construing these allegations to raise an access to the courts claim—which is addressed above—the Court construes these allegations as an attempt to raise Fourteenth Amendment due process claims.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Here, Plaintiff's due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an

adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112 ¶ B (eff. Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Taskila will be dismissed.

## F.    Official Capacity Claims

Finally, Plaintiff brings claims against Defendants Poupard and Taskila in both their individual and official capacities. (ECF No. 1, PageID.2.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan State Police and the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The states and their departments, however, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The United State Supreme Court has confirmed that the Michigan Department of State Police is absolutely immune from a § 1983 suit under the Eleventh Amendment. *Will,* 491 U.S. 58. And, in numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is likewise immune from suit. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Thus, the Court will dismiss, on

27

grounds of immunity, Plaintiff's claims for damages against Defendants Poupard and Taskila in their official capacities.

Here, Plaintiff seeks not only damages, but injunctive relief as well. (ECF No. 1, PageID.67.) While damages claims against official capacity defendants are properly dismissed on grounds of immunity, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

But, importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

As discussed above, Plaintiff has not stated a claim for any violation of federal law by Defendant Poupard, let alone one that could be characterized as ongoing. Therefore, the Court will dismiss Plaintiff's claim for injunctive relief against Defendant Poupard in his official capacity.

Plaintiff does not specify the nature of his request for injunctive relief against Defendant Taskila in his official capacity, indicating only that he "will file injunction in near future." (ECF No. 1, PageID.68.) Yet, the PLRA tasks this Court with determining, at the pleading stage, whether Plaintiff has sufficiently stated a claim upon which relief can be granted. Plaintiff's complaint does not, on its face, sufficiently "seek[] relief properly characterized as prospective." *Ladd*, 971 F.3d

at 581. Moreover, the only remaining claim against Defendant Taskila relates to Defendant Taskila's alleged failure to protect Plaintiff from the actions of Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, and Christoff in providing Plaintiff with contaminated food. However, Plaintiff does not allege that he continues to be provided with contaminated food or that Defendant Taskila has continued to fail to protect Plaintiff from the same, as would be required to state a claim for injunctive relief. Plaintiff describes near-daily instances of contaminated food in March and April 2022, but no "ongoing violation of federal law." *Ladd*, 971 F.3d at 581. Accordingly, the Court will also dismiss Plaintiff's claim for injunctive relief against Defendant Taskila in his official capacity.

<u>**Conclusion**</u>

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Horrocks, Harju, Beaudoin, Coppler, Snyder, Osier, and Beesley are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Hammel, Russell, and Poupard will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim related to the denial of deodorant; First Amendment retaliation claims against Defendants Paakola, Capello, Mattila, Turunen, Hewson, Smith, Christoff, and Taskila; First Amendment claims for interference with Plaintiff's access to the courts; Fourteenth Amendment due process claims; and all official capacity claims. Plaintiff's Eighth Amendment claims against Defendants Paakola, Capello, Sullivan, Mattila, Turunen, Hewson, Watt, Gagnon, Smith, Christoff, and Taskila related to the provision of

contaminated food, and his First Amendment retaliation claims against Defendants Sullivan, Watt, and Gagnon remain in the case.

An order consistent with this opinion will be entered.


Dated:      April 27, 2023                          /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                United States District Judge