UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DAVID ADAMS #462766,

                                                      Case No. 2:23-cv-47

                            Plaintiff,                HON.  ROBERT J. JONKER
                                                      U.S. DISTRICT JUDGE

        v.

JAY POUPARD, *et al.*,

                            Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I. Introduction

        This Report and Recommendation (R&R) addresses Defendants' motion for

summary judgment due to Plaintiff's failure to exhaust administrative remedies.[1]

(ECF No. 25.)  In their motion, Defendants ask that the Court dismiss all Defendants

except Corrections Officer (CO) Sullivan from the lawsuit.  (*Id.*)  Adams filed a

response in opposition to the motion on August 15, 2024.  (ECF No. 27.)  Defendants

replied to the response on September 24, 2024.  (ECF No. 33.)  Adams filed an

unauthorized sur-reply on October 28, 2024, which Defendants have moved to strike.

(ECF Nos. 36, 37.)

        State prisoner David Adams filed an unverified complaint under 42 U.S.C.

§ 1983 alleging violations of his rights that arose during his incarceration at Baraga

---

[1]      Defendants refer to their motion as a "motion for summary judgment," but
concede that claims against CO Sullivan should remain in the suit.  For clarity, the
Court will refer to the motion as a motion for partial summary judgment.

Correctional Facility (AMF).  (ECF No. 1.)  Adams named a total of 21 Defendants in his complaint.  In a screening opinion, the Court dismissed all claims against ten of these Defendants.  At this point, the following eleven Defendants remain in the case:

- Warden Kristopher Taskila,

- Corrections Officer (CO) Tyler Paakola,

- CO Peter Capello,

- CO Drake Sullivan,

- CO Mattila,

- CO Michael Turunen,

- CO Ron Hewson,

- CO Kaden Watt,

- CO Flash Gagnon,

- CO Shawn Smith, and

- CO Tedd Christoff.

Adams asserts an Eighth Amendment claim against all eleven Defendants.  In addition, he asserts a First Amendment retaliation claims against three Defendants – COs Sullivan, Watt, and Gagnon.  (ECF No. 5, PageID.150−51.)

Adams's Eighth Amendment claims relate to his allegation that between January 18 and April 11, 2022, Defendants served him "injuriously rancid-contaminated food."  (ECF No. 1, PageID.8, 33, 38, 42, 48.)  Adams says that the food Defendants served him made him burn, itch, and throb for hours.  (*Id.*, PageID.8, 33, 38, 42, 48.)  Adams asserts that Defendants served him contaminated food with the

knowledge they were doing so or with the purpose of causing him pain. (*Id.*, PageID.14, 15, 16, 18, 20–26, 31–50.)

Adams alleges that COs Sullivan, Watt, and Gagnon retaliated against him for filing grievances in violation of his First Amendment rights. (*Id.*, PageID.11, 20, 22.) Adams says that on February 19, 2022, CO Sullivan denied him phone access after he filed unidentified grievances against one of the CO's colleagues. (*Id.*, PageID.11.) CO Sullivan allegedly ignored Adams's requests for phone access except for two occasions, on which he said, "I heard you were writing grievances Adams- so, no phone, (for you), when Im down here." (*Id.*) Adams also asserts that on March 17, 2022, CO Watt served him rancid food and said, "Adams as long as you're writing grievances and complaints you'll be burning & itching." (*Id.*, PageID.20.) Adams says that March 18, 2022, CO Gagnon served him rancid food and told him, "Adams you shouldnt have wrote that grievance against 'Sullivan' – now deal with the pain." (*Id.*, PageID.21–22.)

All Defendants move for summary judgment on Adams's Eighth Amendment claims. And COs Watt and Gagnon move for partial summary judgment on Adams's retaliation claim. Defendants concede that Adams exhausted his retaliation claim with respect to Sullivan.

In the opinion of the undersigned, Defendants have met their burden of showing that Adams failed to properly exhaust his Eighth Amendment claims and First Amendment claims against them. It is respectfully recommended that the Court grant the Defendants' motion for partial summary judgment. The Court should

dismiss Adams's Eighth Amendment claims related to contaminated food against all eleven Defendants, dismiss Adams's First Amendment Retaliation claims against Watt and Gagnon, and strike Adams's unauthorized sur-reply. If the Court adopts this recommendation, then Adams's First Amendment Retaliation claim against Sullivan will remain in the case.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[2]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."  *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally

furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV.  Analysis

### A.  Verification

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains.  Fed. R. Civ. P. 56(a).  The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment."  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)).  To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746.  *Id.*  In contrast, complaints that are unverified are not considered Rule 56 evidence.  *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that pro se plaintiffs, like Adams, are held to a less stringent pleading standard than parties represented by an attorney.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).  At the summary judgment stage, pro se plaintiffs are thus not held to the same technical requirements as represented

---

[3]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596.  For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

parties.  Still, pro se plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

A review of the record indicates that Adams's complaint and response lack declarations of veracity as called for in 28 U.S.C. § 1746.  (ECF No. 1; ECF No. 27.) In stark contrast, Adams provides declarations of veracity that would comply with § 1746 in each of his forty-seven attachments to his original complaint, a portion of which are shown below:

Pursuant to 28 USC § 1746(2) witness move to make this Declaration under penalty of perjury.

(ECF No. 1-1, PageID.70.)

> Pursuant to 28 USCS § 1746 (2), witness moves to make this Unsworn declaration under penalty of perjury

(*Id.*, PageID.72.)

Pursuant to 28 USCS § 1746 (2), Witness Moves To Make This Unsworn Declaration Under Penalty of Perjury

(*Id.*, PageID.73.)

I, Tony Hurd, do declare under 28.u.s.c 1746 (2) that the foregoing is true under penalties of perjury.

(*Id.*, PageID.74.)

> Further the Declarant says naught.
> Pursuant to 28 U.S.C subsection 1746, I declare under the penalty of perjury
> that the foregoing is true and correct.

(*Id.*, PageID.82.)

> PURSUANT TO 28 USCS §1746 (2)  WITNESS MOVES
> TO MAKE THIS UNSWORN DECLARATION UNDER PENALTY
> OF PERJURY.

(*Id.*, PageID.84.)

> > PURSUANT to 28 USCS 1746 (2)  WITNESS
> Moves to Make this UNSWORN Declaration
> unde penalty of perjury.

(*Id.*, PageID.86.)

> Pursuant to 28 U.S.C subsection 1746 (2), I declare under penalty of perjury that the
> foregoing is true and correct.

(*Id.*, PageID.87.)

That the declarations of veracity were present in each of the *forty-seven* attachments to Adams's complaint, but not in the complaint nor in the response, suggests that Adams was aware of the declarations' significance and that their exclusion from key documents was no accidental misstep by an inexperienced litigant. Thus, even under the less stringent standard of review reserved for pro se plaintiffs, Adams's complaint and response were not executed in a manner sufficient for verification and do not constitute evidence under Rule 56.  *See Cooper*, 2019 WL 5273967, at *2.

### B. Eighth Amendment

In his unverified complaint, Adams alleges that all eleven Defendants violated his Eighth Amendment rights by providing him with rancid food.  (ECF No. 1, PageID.8, 33, 38, 42, 48.)  Adams provides no copies of grievances in his unverified complaint and makes no mention of modified grievance access there.  (ECF No. 1.)

In their motion for summary judgment, Defendants argue that Adams failed to properly exhaust his Eighth Amendment claims because he failed to pursue a grievance related to contaminated food through Step III of the grievance process. (ECF No. 26, PageID.270.)  Defendants acknowledge that Adams filed seven relevant Step III appeals but assert that Adams did not exhaust claims through any of the six grievances that mentioned contaminated food.[4]  (*Id.*)  Defendants assert AMF-703 and AMF-610 did not exhaust any claims because they did not name any MDOC Defendants at Step I.  (*Id.*)  Additionally, Defendants assert AMF-428, AMF-466, AMF-467, and AMF-124 did not exhaust any claims because they were rejected during the grievance process.  (*Id.*, PageID.271.)  Defendants provide copies of relevant grievances.  (*Id.*)

In his unverified response, Adams asserts that he properly exhausted all relevant grievances.  (ECF No. 27.)  Adams states for the first time that he was on

---

[4]      Grievances <u>AMF-22-01-0124-28i</u> ("AMF-124"), <u>AMF-22-03-428-28e</u> ("AMF-428"), <u>AMF-22-03-466-28i</u> ("AMF-466"), <u>AMF-22-03-467-28i</u> ("AMF-467"), <u>AMF-22-04-610-28c</u> ("AMF-610"), and <u>AMF-22-05-703-28i</u> ("AMF-703") are those relevant to Adams's Eighth Amendment claims.  For conciseness, these grievances will be respectively labeled: AMF-124, AMF-428, AMF-466, AMF-467, AMF-610, and AMF-703.

modified access to grievances from March 21 to June 19, 2022.  (*Id.*)  Adams says that during that time, Hamel wrongfully rejected grievances, failed to refer grievances to internal affairs, and ignored grievance requests.    (*Id.*)    Adams argues Hamel thwarted his ability to pursue grievances while on modified access.  (*Id.*)  Adams asserts he will "forward those <u>19</u> [grievance] documents directly to the Court," but fails to attach them to his response because he "do[es] not have the funds to afford photo copies for the Court."  (ECF No. 27, PageID.355.)

The purpose of the grievance process is to alert prison officials to problems within their facilities.  *See Porter v. Nussle*, 534 U.S. 516, 523 (2002).  Where grievants fail to raise issues that could have been, but were not, raised during the grievance process, they may not raise that issue in subsequent litigation.  *See Bailey v. Michigan Dep't of Corr.*, No. 1:23-CV-57, 2024 WL 3759785, at *4 (W.D. Mich. July 9, 2024), *report and recommendation adopted*, No. 1:23-CV-57, 2024 WL 3756405 (W.D. Mich. Aug. 12, 2024) (citing *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012)).  In *Jones*, the plaintiff's grievance was rejected because he did not attempt to resolve the issue with the defendant before filing his Step I grievance.  *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012).  Jones also failed to explain why he did not comply with this requirement in his Step II and III appeals.  Before the district court, however, the Jones argued that he attempted to resolve the issue with the defendant by sending him a kite one day prior to filing his grievance, and he submitted a copy of the alleged kite in response to the defendant's motion for summary judgment.  The Sixth Circuit held that the district court properly found the

plaintiff's claim unexhausted because the plaintiff should have made his improper rejection argument during the grievance process rather than in his civil action.

Here, Adams asserts for the first time in his unverified response that AMF-124 was wrongfully rejected for failure to resolve issue with appropriate staff. (*Id.*, PageID.353.) Adams states in his unverified response that he properly included his attempt to resolve with Paakola in AMF-124 at Step I and argues that Hamel wrongfully rejected that grievance for failure to attempt resolution. (*Id.*; ECF No. 26-3, PageID.352.) Much like Jones, Adams failed to argue the point of wrongful rejection at Step I in either his Step II and Step III appeals of AMF-124. (ECF No. 26-3, PageID.350.) Furthermore, a review of the documents before the Court shows that rejection of AMF-124 for failure to resolve was proper under MDOC PD 03.02.130. Finally, because Adams makes the factual assertion of a wrongful rejection in an unverified pleading, the Court is unable to credit it as evidence at this stage. *See Cooper*, 2019 WL 5273967, at *2. Thus, Adams may not bring the wrongful rejection challenge in this suit.

Similarly, Adams asserts AMF-466 was wrongfully rejected for failure to attempt to resolve. (ECF No. 27, PageID.354.) At Step I, Adams failed to mention a prior attempt at resolution, instead stating that he is "filing against Mr. Hewson and Mr. Turunen." (ECF No. 26-3, PageID.332.) Adams does raise the failure to resolve issue at Step II saying, "I did attempt to resolve," but fails to raise the issue at Step III. (*Id.*, PageID.330.) Because Adams did not mention his attempt at resolution

in Step I as required by MDOC PD 03.02.130 ¶ Q, and was thus properly rejected, he may not raise the issue of wrongful rejection here.

Adams also argues that AMF-467 was wrongfully rejected for failure to resolve. (ECF No. 27, PageID.354.)  At Step I, Adams fails to mention prior resolution stating only, "Filing this against Capello and Paakola."  (ECF No. 26-3, PageID.336.)  Adams raises failure to resolve at Step II stating, "the grounds for rejection are not supported by policy," but then fails to mention the issue at Step III.  (*Id.*, PageID.334.)  Because Adams did not mention his attempt at resolution in Step I as required by MDOC PD 03.02.130 ¶ Q, and was thus properly rejected, he may not raise the issue of wrongful rejection here.

Adams also asserts that AMF-428 was filed in a timely manner and thus wrongfully rejected as untimely.  (ECF No. 27, PageID.354.)   The record shows that AMF-428 was denied at Step I for lack of evidence, rejected as untimely at the Step II appeal, and rejected once more at the Step III appeal.  (ECF No. 26-3, PageID.318−21.)  Adams did properly argue that his Step II appeal was timely at the Step III appeal.  (*Id.*, PageID.318.)  Adams received his Step I response March 14, 2022 and did not file his Step II appeal until April 6, 2022, outside the ten day window as required by MDOC PD 03.02.130 ¶ DD, thus his Step II was properly rejected as untimely and cannot be raised here.  (*Id.*, PageID.319.)

Next, Adams argues that his rejected grievances fell under the jurisdiction of Internal Affairs and were not properly referred there.  (ECF No. 27.)  MDOC PD 03.02.130 ¶¶ R & W states that grievances that allege conduct that falls under the

jurisdiction of Internal Affairs "shall be referred to Internal Affairs…even if they would otherwise be rejected."  (ECF No. 26-2, PageID.280.)  Where Internal Affairs determines a grievance is within their jurisdiction, it shall begin and investigation and notify the grievant that "an extension of time is therefore needed to response to the grievance."  (*Id.*)  Where Internal Affairs determines that a grievance is not in their jurisdiction, the grievance will proceed with Step I as required by policy.  (*Id.*)  As the record reflects, no extensions were given for any of Adams's grievances and no notice was given by Internal Affairs, the issues in Adams's grievances did not fall under the jurisdiction of Internal Affairs and were not improperly withheld.

Finally, Adams asserts that he was thwarted in his ability to exhaust his grievances properly while he was on modified access.  (ECF No. 27.)  Under MDOC policy, a prisoner is placed on modified access for filing an excessive number of grievances or when found guilty of misconduct for filing an unfounded grievance. 03.02.130, ¶ JJ.  The initial modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner can only obtain grievance forms through the Step I Grievance Coordinator, who determines whether the issue is grievable and otherwise meets criteria outlined under the grievance policy.  *Id.*, ¶ MM. MDOC policy further requires the Grievance Coordinator to "maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial." *Id.*

16

The Sixth Circuit has addressed modified access to the grievance process in an unpublished opinion and has held that such modified access does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. *Hartsfield v. Mayer*, 76 F.3d 378, 1996 WL 43541, **3 (6th Cir. 1996) (unpublished).  Rather, it merely requires the prisoner obtain permission from the grievance coordinator to file a grievance. *Id.*

Where a prisoner on modified access follows the procedure set out in ¶ MM and a grievance officer improperly denies a prisoner's request for a grievance form, then that "would be the end of all possible administrative remedies with regard to that grievance." *Walker v. Michigan Department of Corrections,* 128 Fed. Appx. 441, 446 (6th Cir. 2005).  A court would then have jurisdiction to hear a related federal claim, as all administrative remedies that would have been exhausted. *Id.*

GC Hamel's affidavit presents conflicting evidence to Adams's unverified assertions. (ECF No. 34.)  Hamel states that as the AMF Grievance Coordinator, he is obligated to receive and process Step I grievances in accordance with the MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances.  (*Id.*, PageID.385–86.)  Hamel explains that prisoners may send him a kite inquiring as to the status of their Step I grievance, requesting to resubmit a Step I grievance, or requesting a Step II grievance appeal form. (*Id.*, PageID.386–87.)  Hamel says that he does not have "any discretion" in deciding whether to log or process a kite, a grievance request, a Step I grievance, or a Step II appeal because failure to do so could lead to his termination. (*Id.*, PageID.386.)

17

GC Hamel states that where a prisoner on modified access submits a request for a Step I form, he must review it for conformity with MDOC P.D. 03.02.130.  (*Id.*, PageID.387.)  If the request does not conform with the policy's requirements or is otherwise subject to a rejection, Hamel would then deny the request for the Step I grievance.  (*Id.*, PageID.387–88.)

Hamel states that his review of grievance office records for Adams showed that Adams was on modified access from March 17 to June 19, 2022 due to his misuse of the grievance process.  (*Id.*, PageID.388.)  Hamel stresses that Adams was placed on modified access because he filed three rejected grievances within a thirty-day period. (*Id.*)  Hamel shows that Adams filed these three grievances in just a week.  (*Id.*) Shown below are the memos requesting that Adams be placed on modified access and informing Adams of his modified status:



**DATE:** March 17, 2022

**TO:** K. Taskila - Warden
Baraga Maximum Correctional Facility

**FROM:** T. Hamel - Grievance Coordinator
Baraga Maximum Correctional Facility

**SUBJECT:** Modified Access Request – Adams 462766 (2-141)

This prisoner has filed (14) grievances (3) which have been rejected/denied under PD 03.02.130 all within a 30-day period.

Per PD-03.02.130, Prisoner/Parolee Grievances, Paragraph JJ, "A prisoner or parolee who files an excessive number of grievances **(three within a 30 calendar day span)** that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days."

Based on the above information, it is requested that prisoner Adams 462766 be placed on Modified Access Status effective 3/21/2022 and commencing through the 90-calendar day period. (6/19/2022)

(*Id.*, PageID.393.)

DATE:      March 22, 2022

TO:        Adams 462766                    LOCK: 2-141

FROM:      T. Hamel - Grievance Coordinator
           Baraga Maximum Correctional Facility

SUBJECT:   Modified Access Status

Per the approval of the Warden, you have been placed on Modified Access Status to the grievance process in accordance with PD 03.02.130. You are on Modified Access Status for 90 days effective 3/21/22 through 6/19/22 and will remain on Modified Access regardless of transfer to another facility.

Per PD-03.02.130, while you are on modified access, you are to request grievance forms from my office only. If I determine that the issue presented is a grievable issue and meets the criteria outlined in policy, I will provide you with a grievance form. If you attempt to file a grievance using a form not provided by this office, you will be notified that the grievance will not be processed and your Modified Access Status may be extended for an additional 30 days for each violation.

(*Id.*, PageID.392.)

Hamel shows that while Adams was on modified access, Adams submitted five kites requesting a total of fifteen Step I grievances between March 25 and May 31, 2022. (*Id.*, PageID.388.) Adams's March 25, 2022 kite requested one Step I grievance, which was granted. (*Id.*) Adams's April 26, 2022 kite requested three Step I grievances, which were all granted. (*Id.*) Adams's May 19, 2022 kite requested three Step I grievances, which were all denied. (*Id.*) Adams's May 25, 2022 kite requested four Step I grievances, which were all denied. (*Id.*, PageID.389.) Finally, Adams's May 31, 2022 kite requested four Step I grievances, which were all granted. (*Id.*) The content of the kites is shown below:



(*Id.*, PageID.413.) (Granting one grievance request.)



(*Id.*, PageID.414.) (Granting three grievance requests.)



(*Id.*, PageID. 415.) (Denying three grievance requests for not attempting to resolve.)



(*Id.*, PageID.416.) (Denying grievance requests for failure to attempt to resolve.)



(*Id.*, PageID.417.) (Granting all grievance forms.)

Hamel shows that while Adams was on modified access, Adams filed four grievances at Step I. (*Id.*, PageID.389.) Show below is the prisoner grievance summary report for Adams (yellow highlighting indicating grievance number and blue highlighting indicating date of filing):

| 20220610 | 462766 | ADAMS | AMF | 28C  | 4/12/2022 | d |
| 20220701 | 462766 | ADAMS | AMF | 12E1 | 5/3/2022  | d |
| 20220702 | 462766 | ADAMS | AMF | 12E1 | 5/3/2022  | d |
| 20220703 | 462766 | ADAMS | AMF | 281  | 5/3/2022  | x |

Hamel also shows that Adams filed ten Step II appeals while on modified access. (*Id.*, PageID.389.) Shown below is the prisoner grievance summary report, (yellow highlighting indicating grievance number and blue highlighting indicating date of filing for the Step II appeal):

| 20220326 | 462766 | ADAMS | AMF | 22H | 2/25/2022 | d | 3/24/2022 |
|---|---|---|---|---|---|---|---|
| 20220371 | 462766 | ADAMS | AMF | 15A | 3/1/2022 | d | 3/17/2022 |
| 20220419 | 462766 | ADAMS | AMF | 28E | 3/8/2022 | d | 4/6/2022 |
| 20220428 | 462766 | ADAMS | AMF | 28E | 3/10/2022 | d | 4/6/2022 |
| 20220446 | 462766 | ADAMS | AMF | 22H | 3/11/2022 | d | |
| 20220449 | 462766 | ADAMS | AMF | 27B | 3/11/2022 | x | 4/4/2022 |
| 20220466 | 462766 | ADAMS | AMF | 28I | 3/16/2022 | x | 4/4/2022 |
| 20220467 | 462766 | ADAMS | AMF | 28I | 3/16/2022 | x | 4/4/2022 |
| 20220468 | 462766 | ADAMS | AMF | 12E4 | 3/17/2022 | d | |
| 20220610 | 462766 | ADAMS | AMF | 28C | 4/12/2022 | d | 5/17/2022 |
| 20220701 | 462766 | ADAMS | AMF | 12E1 | 5/3/2022 | d | 5/26/2022 |
| 20220702 | 462766 | ADAMS | AMF | 12E1 | 5/3/2022 | d | 5/26/2022 |

(*Id.*, PageID.418.)

Hamel shows that after Adams's time on modified access ended, he filed eleven grievances at Step I and filed eight Step II appeals between June 20 and August 29, 2022.  (*Id.*, PageID.389.) Shown below is the prisoner grievance summary report, (yellow highlighting indicating grievance number, blue highlighting indicating date of filing for the Step I, purple indicating filing date for Step II, orange indicating filing date for Step III):

| 20220930 | 462766 | ADAMS | AMF | 15A | 6/22/2022 | d | 7/21/2022 | d | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 20220931 | 462766 | ADAMS | AMF | 15A | 6/22/2022 | d | 7/21/2022 | d | | |
| 20220932 | 462766 | ADAMS | AMF | 15F | 6/22/2022 | d | 7/18/2022 | d | 9/13/2022 | d |
| 20220933 | 462766 | ADAMS | AMF | 14F | 6/22/2022 | d | 7/18/2022 | d | 9/13/2022 | d |
| 20220966 | 462766 | ADAMS | AMF | 14F | 6/29/2022 | d | 8/9/2022 | d | 2/22/2023 | d |
| 20220968 | 462766 | ADAMS | AMF | 19Z | 6/29/2022 | d | | N | | |
| 20221003 | 462766 | ADAMS | AMF | 28A | 7/7/2022 | x | 8/9/2022 | x | 9/13/2022 | d |
| 20221051 | 462766 | ADAMS | AMF | 03F | 7/13/2022 | d | 8/16/2022 | d | | |
| 20221146 | 462766 | ADAMS | AMF | 19Z | 8/1/2022 | r | | N | | |
| 20221249 | 462766 | ADAMS | AMF | 07A | 8/17/2022 | d | 9/21/2022 | d | | |
| 20221339 | 462766 | ADAMS | AMF | 28I | 8/29/2022 | x | | N | | |

(*Id.*, PageID.418.)

Hamel states in his affidavit that "[w]hile Adams was on modified access status, [he] logged and processed every kite Adams had submitted to request a Step I

grievance form." (*Id.*, PageID.389.)  Hamel says that "[a]t no time did [he] ever fail to log or process a Step I grievance, a Step II appeal, or a kite requesting a Step I grievance from Adams, nor did [he] ever prevent Adams from pursuing a grievance through the grievance process." (*Id.*)

The record shows that Adams was on modified access to the grievance process at the time of the incidents alleged. (*Id.*, PageID.388, 392.)  Because Adams's allegations that he was denied access to grievances during this period were presented through his unverified complaint and unverified response, the undersigned is unable to credit those allegations as evidence for Rule 56 purposes. *See Cooper*, 2019 WL 5273967, at *2.  GC Hamel's affidavit and supporting documents show that Adams was not denied access to grievances while on modified access, as he successfully filed four Step I grievances and appealed ten other grievances to Step II. (ECF No. 34, PageID.389.)  Thus, Adams had access to the grievance system while he was on modified access.

As previously discussed, Adams's grievances relevant to contaminated food include AMF-124, AMF-466, AMF-467, AMF-610, and AMF-703. (ECF No. 26-3.)  Shown below is a brief overview of the content and procedural history of each grievance:

| Grievance Number & Record Pincite | MDOC Defendant Grieved | Issue Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| AMF-22-01-124-28i<br><br>(ECF No. 26-3, PageID.352) | Step I: Paakola and "his colleagues." | On 1/18/22, Paakola served Adams contaminated food causing him to itch and burn. | Step I: Rejected for failure to attempt to resolve with appropriate staff.<br><br>Step II: Rejection upheld. |

| Grievance Number & Record Pincite | MDOC Defendant Grieved | Issue Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| | Step II: Taskila, Paakola, staff generally<br><br>Step III: Hamel | | Step III: Rejection upheld. |
| AMF-22-03-428-28e<br><br>(ECF No. 26-3, PageID.320.) | Step I: Mattila<br><br>Step II: General mail staff<br><br>Step III: Borgen | On 3/7/22, Mattila served Adams "food that had been replaced with a injurious substance" in retaliation. | Step I: Denied, "no evidence to support the claim."<br><br>Step II: Rejected for untimely filing of Step II appeal.<br><br>Step III: Rejection affirmed |
| AMF-22-03-466-28i<br><br>(ECF No. 26-3, PageID.332.) | Step I: Hewson, Turunen<br><br>Step II: Hewson, Turunen<br><br>Step III: Hamel, Hoffman, Taskila | On 3/8/22, Hewson and Turunen served Adams contaminated food causing him to itch and burn. | Step I: Rejected for failure to attempt to resolve with appropriate staff.<br><br>Step II: Rejection upheld.<br><br>Step III: Rejection upheld. |
| AMF-22-01-467-28i<br><br>(ECF No. 26-3, PageID.336.) | Step I: Capello and Paakola<br><br>Step II: Hamel<br><br>Step III: Hamel, Hoffman, Taskila | On 3/9/22, Paakola and Capello served Adams contaminated food causing him to itch and burn. | Step I: Rejected for failure to attempt to resolve with appropriate staff.<br><br>Step II: Rejection upheld.<br><br>Step III: Rejection upheld. |
| AMF-22-04-610-12-B1<br><br>(ECF No. 26-3, PageID.311.) | Step I: Harju<br><br>Step II: Harju, Beaudoin, and unnamed others<br><br>Step III: Harju and Beaudoin | On 3/23/22, Harju told Adams he would not receive mental health medication because he was "being punished."<br><br>Adams alleges his mental health was declining due to "rancid-nutritionally deficient" food. | Step I: Denied.<br><br>Step II: Denied (as to mental health).<br><br>Step III: Rejected (as multiple issues which included mental health and rancid food). |
| AMF-22-05-703-28i<br><br>(originally AMF-22-05-703-12-f1) | Step I: Lewis<br><br>Step II:  None<br><br>Step III: Healthcare division | Since 1/25/22, Adams did not receive pain medication for pain caused by "contaminated food." | Step I: Rejected for failure to attempt to resolve with the appropriate staff.<br><br>Step II: Rejection upheld.<br><br>Step III: Rejection upheld. |

| Grievance Number & Record Pincite | MDOC Defendant Grieved | Issue Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| (ECF No. 26-3, PageID.306.) | | Lewis told him it was not necessary to prescribe pain medication. | |

Grievance AMF-124 corresponds with Adams's claim that on 1/18/22, Paakola served Adams contaminated food causing him to itch and burn. (ECF No.1; ECF No. 26-3, PageID.352.) AMF-124 was rejected at Step I for failure to attempt to resolve, that rejection was upheld at Step II, and upheld once more at Step III. (ECF No. 26-3, PageID.350−52.) Step I and Step II both concern the issue of contaminated food, but Step III discusses only the hypothetical jurisdiction of Internal Affairs. (*Id.*) Because AMF-124 was not addressed on the merits through Step III and did not grieve the same issues or parties through Step III, Adams failed to properly exhaust his Eighth Amendment claims against Paakola through this grievance.

Grievance AMF-428 corresponds to Adams's claim against Mattila for the service of contaminated food on March 7, 2022. (ECF No. 1, PageID.12; ECF No. 26-3, PageID.320.) At Step I, Adams mentions Mattila stating that he "targeted [him] with food that had been prelaced with an injurious substance." (ECF No. 26-3, PageID.320.) AMF-428 was denied at Step I for lacking evidence. (*Id.*) At Step II, Adams fails to mention Mattila and instead focuses on the mailroom's alleged confiscation of his incoming envelopes. (*Id.*) AMF-428 was rejected at Step II as being untimely filed after more than ten days. (*Id.*, PageID.319.) At Step III, Adams neglects Mattila once more and writes only about Sergeant Borgen and the allegedly

26

timely submission of his Step II appeal.  (*Id.*, PageID.318.)  The rejection was upheld at Step III.  (*Id.*, PageID.290.)  Because AMF-428 was not addressed on the merits through Step III of the grievance process and failed to discuss Adams's claims against Mattila at each step, Adams failed to properly exhaust his Eighth Amendment claims against Mattila through AMF-428.

Grievance AMF-466 aligns with Adams's allegations in his complaint that Hewson and Turunen served him contaminated food on March 8, 2022. (ECF No. 1, PageID.17; ECF No. 26-3, PageID.330.)  The grievance was rejected at Step I for failure to attempt to resolve, that rejection was upheld at Step II, and upheld once more at Step III without being addressed on the merits.  (ECF No. 26-3, PageID.330−33.)  Adams's claims against Hewson and Turunen were repeated at Step I and Step II, but are not mentioned at Step III.  (*Id.*)  Because AMF-466 was not addressed on the merits through Step III and did not address the same issues or parties through Step III, Adams failed to properly exhaust his Eighth Amendment claims against Hewson and Turunen through this grievance.

Grievance AMF-467 corresponds with Adams's claims that Capello and Paakola served him contaminated food on March 9, 2022 that made him "burn and itch." (ECF No. 1, PageID.18; ECF No. 26-3, PageID.336.)  The grievance was rejected at Step I for failure to attempt resolution with the correct staff, that rejection was upheld at Step II, and was upheld once more at Step III.  (ECF No. 26-3, PageID.334−36.)  At Step I, Adams does grieve remaining Defendants Capello and Paakola.  (*Id.*)  However, Adams fails to mention them or any other Defendant at

Step II.  (*Id.*)  At Step III, Adams fails to mention either Capello or Paakola, but does include an assertion that Hamel, Hoffman, and Taskila "failed to protect [him]." (*Id.*, PageID.334.)  Because AMF-467 was not addressed on the merits at any step and fails to name remaining MDOC Defendants at each step, Adams failed to properly exhaust his claims against Capello and Paakola through this grievance.

Grievance AMF-610 is principally concerned with Adams's lack of access to mental healthcare following the exacerbation of his mental health due to receiving contaminated food.  (ECF No. 1, PageID.28−29; ECF No. 1-2, PageID.118.)  While contaminated food is mentioned at Step I, the solution being sought in the grievance is related to medication to "counter 'excessive clinical depression'" and Dale Harju's statement that Adams was "being punished" and that "med's are a reward."  (ECF No. 1-2, PageID.118.) AMF-610 was addressed on the merits at Step I, but was denied because Adams's treatment was "within the realm of standard medical care."  (*Id.*, PageID.119.)  At Step II, Adams was primarily concerned with the issue of "clinical depression" and statements from Mike Beaudoin and Harju that he was "being punished so no med's for [Adams]."  (*Id.*, PageID.120.)  Here, Adams asserted that his food was contaminated in retaliation for writing grievances, but mentioned no remaining Defendants.  (*Id.*)  Step II was denied on the merits, but addressed only issues related to medical care, deeming contaminated food a "new issue[]."  (*Id.*, PageID.122.)

In AMF-610's Step III appeal, Adams stated Harju and Beaudoin "made it clear to [him] that [he is] being punished by being refused the needed psyche med's."

(*Id.*, PageID.120.) Adams's claim was rejected for a procedural issue at Step III, being labeled as having "multiple issues." (*Id.*, PageID.123.) As in *Raper v. Controneo*, prison officials addressed Adam's claims on the merits at Step I and Step II, only rejecting the grievance at Step III for an existing procedural defect. *See* 2018 WL 2928188, at *1 (W.D. Mich., June 12, 2018). It is unfair for Defendants to argue that a plaintiff failed to exhaust grievance remedies based upon a grievance rejection on procedural grounds asserted for the first time at Step III of the process, where the grounds were previously waived. *Powell v. MDOC*, 2019 WL 10744936, at *2 (W.D. Mich., Dec. 19, 2019); *Raper*, 2018 WL 2928188, at *3; *Sedore v. Greiner*, 2020 WL 8837441, at 7 (E.D. Mich. Sept. 21, 2020) ("As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word.").

While it would be unfair to say Adams did not properly exhaust due to the rejection of the grievance at Step III, AMF-610 fails to exhaust Adams Eighth Amendment claims related to contaminated food for other reasons. First, Adams failed to mention one of the remaining MDOC Defendants at any step for AMF-610. (ECF No. 1-2, PageID.118–23.) Instead, Adams names Harju at each step for AMF-610. In a similar vein, while Adams does mention contaminated food at Step I and Step II, the issue of contaminated food is not the primary concern in either of those forms and is not addressed on the merits at those stages by the MDOC. (*Id.*) AMF-610 is primarily concerned with the issue of improper mental health care for Adams,

29

as he mentions the issue at each step and details his need for psychiatric medication. (*Id.*)

Grievance AMF-703 does not correspond with any of Adams's claims that remain in the case, instead asserting that MP Lewis refused him medical care for injuries caused by contaminated food.  (*Id.*, PageID.306.)  AMF-703 was never reviewed on the merits as it was rejected at Step I for failure to attempt resolution with the appropriate staff, that rejection was upheld at the Step II appeal, and upheld once more at Step III.  (*Id.*, PageID.304−07.)  Adams fails to grieve any remaining MDOC Defendant throughout the grievance process, mentioning only MP Lewis's failure to provide medical care at Step I, a general assertion of the right to medical treatment at Step II, and the general healthcare division at Step III.  (*Id.*)  Because AMF-703 was not addressed on the merits through Step III, did not concern any of the claims remaining in the case, and did not address any remaining MDOC Defendants at any of the three steps, Adams has failed to properly exhaust any of his Eighth Amendment claims through this grievance.

Ultimately, the purpose of the grievance system is to alert prison officials to problems within their facilities.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The MDOC Policy Directive 03.02.130 ¶ S states that to provide adequate notice to officials, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process.  *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159,

at *3 (6th Cir. Apr. 23, 2019).  The record reflects that Adams failed to submit Step I grievances related to his Eighth Amendment food contamination claims that named Defendants Taskila, Sullivan, Watt, Smith, or Christoff. (ECF No. 1; ECF No. 1-2; ECF No. 26-3.)  Because Adams failed to mention these Defendants at Step I, he failed to properly exhaust a grievance against them.

In the opinion of the undersigned, Defendants have met their burden of showing that Adams failed to properly exhaust his Eighth Amendment claims against the Defendants through grievances AMF-124, AMF-428, AMF-466, AMF-467, AMF-610, and AMF-703. Thus, the Court should grant the Defendants' motion for summary judgment in relation to their Eighth Amendment claims.

### C. First Amendment Retaliation

In his complaint, Adams alleges COs Sullivan, Watt, and Gagnon retaliated against him for filing grievances in violation of his First Amendment rights.  (*Id.*, PageID.11, 20, 22.)  Adams says CO Sullivan denied him phone access after he filed grievances.  (*Id.*, PageID.11.)  Adams also asserts that COs Watt and Gagnon served him rancid food after filing grievances.  (*Id.*, PageID.21–22.)

In their motion for partial summary judgment, Defendants argue Adams failed to exhaust his First Amendment claims against Watt and Gagnon.  (ECF No. 26.)  Defendants assert Adams failed to name either Watt or Gagnon in a grievance properly appealed through Step III.  (*Id.*)  Defendants concede that Sullivan was named in a Step I grievance that was addressed on the merits at each step and thus properly exhausted.  (*Id.*, PageID.272.)

In his unverified response, Adams asserts that he properly exhausted all grievances relevant to his complaint.  (ECF No. 27.)  Adams relies on his modified access status and states that the grievance process was made unavailable to him by Hamel's refusal to give him grievance forms.  (*Id.*, PageID.355.)

Adams's grievances relevant to his First Amendment retaliation claims include only AMF-326.  (ECF No. 26-3.)   Shown below is a brief overview of the grievance's content and procedural history:

| Grievance Number & Record Pincite | MDOC Defendant Grieved | Issue Grieved at Step I | Grievance Outcome |
|---|---|---|---|
| AMF-22-02-326-22h<br><br>(ECF No. 26-3, PageID.328.) | Step I: Sullivan<br><br>Step II: Sullivan<br><br>Step III: Sullivan | On 2/19/22, Sullivan denied Adams use of the phone in retaliation for his grievances. | Step I: Denied.<br><br>Step II: Denied, the Step I response "provided…a completed and thorough response."<br><br>Step III: Denied. |

Grievance AMF-326 relates to Adams's claim that Sullivan denied him access to the telephone on February 19, 2022 in retaliation for filing grievances.  (ECF No. 1, PageID.11.)  At Step I, Adams asserts he asked Sullivan for the phone and was told, "I hurd u been writing grievances Adams, so no phone when im down here."  (ECF No. 26-3, PageID.328.)  AMF-326 was denied on the merits at Step I because Sullivan "denied all allegations."  (*Id.*)  At Step II, Adams again reiterates he was retaliated against and points to facts that support his allegation that Sullivan denied him phone access.  (*Id.*, PageID.326.)  Step II was denied on the merits, stating Sullivan denied the allegations against him and stated that Adams made three prepaid and three free

calls in the month of February.  (*Id.*, PageID.327.) At Step III, Adams stressed that "Sullivan did retaliate against [him] for writing grievances."  (*Id.*, PageID.326.) Step III was denied once more on the merits as "it has been determined that [Adams's] issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.325.)  Because Adams's First Amendment Retaliation claim that Sullivan denied him phone access corresponds with the issue grieved and evaluated on the merits from Step I to Step III of the grievance process, Adams properly exhausted his claim against Sullivan through AMF-326.

The record reflects that Adams failed to include Watt and Gagnon in a Step I grievance corresponding with his First Amendment retaliation claims against them. (ECF No.1; ECF No. 1-2; ECF No. 26-3.)  Adams thus failed to properly exhaust his First Amendment claims against Watt and Gagnon.

In the opinion of the undersigned, Defendants' motion for partial summary judgment motion should be granted as to Watt and Gagnon for failure to properly exhaust administrative remedies.  As the Defendants conceded, Adams properly exhausted his First Amendment claim against Sullivan through AMF-326 and the claim will remain in the case.

## V.  Recommendation

The undersigned respectfully recommends that this Court dismiss all of Adams's Eighth Amendment claims related to contaminated food.  The Court should also dismiss Adam's First Amendment Retaliation claims against Watt and Gagnon.

Finally, the Court should strike Adams's unauthorized sur-reply.  Adams's First

Amendment Retaliation claim against Sullivan should remain in the case.


Dated:  November 22, 2024                        /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.
72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR
72.3(b).  Failure to file timely objections may constitute a waiver of any further right
of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*,
474 U.S. 140 (1985).