UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID ADAMS #462766,

    Plaintiff,

v.

JAY POUPARD, et al.,

    Defendants.
_____/

Case No.  2:23-cv-00047

Hon.  Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant's motion for summary judgment.  (ECF No. 45.)

Plaintiff — state prisoner David Adams — filed an unverified complaint under 42 U.S.C. § 1983 alleging violations of his rights that arose during his incarceration at Baraga Correctional Facility (AMF).  (ECF No. 1.)  Specifically, Adams alleges that Corrections Officer (CO) Drake Sullivan retaliated against him after Adams filed grievances in violation of his First Amendment rights.  (ECF No. 1, PageID.11.)

The events giving rise to Adams's retaliation claim occurred on February 19, 2022.  Between December 1, 2021 — the date Adams arrived at AMF — and February 19, 2022, Adams filed three grievances, none of which involved CO Sullivan.  (ECF No. 46-2, PageID.494; ECF No. 46-3, Page.ID498; ECF No. 46-4. PageID.500-02.)  Adams says that on February 19, he asked CO Sullivan for the phone between ten and twenty times.  (ECF No. 46-5, PageID.535.)  CO Sullivan allegedly ignored

Adams's requests except for two occasions, when he said, "I heard you writing grievances Adams — so, no phone, (for you), when Im [sic] down here." (ECF No. 1, PageID.11.)  Adams presents a declaration from prisoner Worthey who attests that he heard Sullivan make this comment. (ECF No. 48-1, PageID.580 (affidavit of Worthey).)

Adams originally named a total of 21 Defendants in his complaint. In a screening opinion, the Court dismissed all claims against ten of these Defendants. (ECF No. 5.) Defendants then filed a partial motion for summary judgment on the basis of exhaustion. (ECF No. 25.) In an earlier R. & R., the undersigned recommended that all of Adams's claims be dismissed except for Adams's First Amendment Retaliation claim against CO Sullivan. (ECF No. 39.) The Court adopted that R. & R. (ECF No. 40.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits,

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. Furthermore, "the threat of adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032,

3

1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

At AMF, Adams was a participant of the Incentives in Segregation Program (IISP). (ECF No. 46-5, PageID.521-22.) The IISP is a six-stage program designed to incentivize positive behavior in prisoners classified to Administrative Segregation. (ECF No. 46-6, PageID.551.) Prisoners begin at Stage Two and, provided they meet specific goals, they move up through the stages. (*Id.*) Each stage is accompanied by new privileges. (*Id.*) Prisoners in Stages One, Two, and Three are not afforded any telephone calls. (*Id.*, PageID.552-554.) Prisoners at Stage Four are permitted to make one fifteen-minute phone call per month. (*Id.*, PageID.555.) Prisoners at Stages Five and Six are permitted two fifteen-minute phone calls per month. (*Id.*, PageID.556.) In addition to IISP phone calls, prisoners were also permitted one ten-minute phone call per week because of the COVID-19 pandemic. (ECF No. 46-5, PageID.528.)

Adams believed that, as of February 19, 2022, he was at Stage Five of the IISP, meaning that he would be permitted two phone calls per month in addition to weekly

4

COVID-19 phone calls. (*Id.*, PageID.529.) However, the Michigan Department of Corrections (MDOC) Segregation Behavior Review Records show that Adams was at either Stage Three or Stage Four. (ECF No. 46-7, PageID.560-61.) On February 10, 2022, Adams's Segregation Behavior Review form, portions of which is shown below, stated that he was at Stage Three, and would therefore have been allowed zero IISP calls and weekly COVID-19 calls. (*Id.*, PageID.561.)

| MICHIGAN DEPARTMENT OF CORRECTI... SEGREGATION BEHAVIOR REVIEW | | | | | CSJ-283 Rev. 07/18 |
|---|---|---|---|---|---|
| **GENERAL INFORMATION** | | | | | |
| Review Type: At Least Monthly Thereafter | | ERD: Life | AMX: | | |
| Prisoner Number: 462766 | Prisoner Name: Adams | Facility Code: AMF | Lock: 2-141 | Date: 2/10/22 | |
| Type of Segregation: (Check All That Apply): ☒ Administrative Date Classified To: 9/9/18  ☐ Punitive: Date Placed In: | | | OPT: ☐ Yes  ☒ No ☐ Temporary: Date Placed In: | | |
| Reason for Segregation Classification: Serious Threat To Physical Safety Of Others | | | | | |

. . . .

| **HOUSING UNIT TEAM EVALUATION** | | | | |
|---|---|---|---|---|
| IISP STAGE: N/A ☐  ☐ I ☐ II ☒ III ☐ IV ☐ V ☐ VI | | | **Housing Unit Officers** | |
| | | AM (Print Name) [signature] | PM (Print Name) Schuyl | |
| Appropriate Behavior and Attitude: | With Staff: | ☐ Never ☐ Rarely ☒ Sometimes ☐ Regularly | ☐ Never ☐ Rarely ☒ Sometimes ☐ Regularly | |
| | With Prisoners: | ☐ Never ☐ Rarely ☒ Sometimes ☐ Regularly | ☐ Never ☐ Rarely ☒ Sometimes ☐ Regularly | |
| | Housekeeping and Personal Hygiene: | ☐ Good ☒ Adequate ☐ Poor | ☐ Good ☒ Adequate ☐ Poor | |
| Regular Housing Unit Officers: | | Signature: [signature] | Signature: [signature] | |
| ARUS/PC Name & Title: J. Gibson, PC | | Signature: [signature] | | Date: 2/10/22 |

(*Id.*)

A month later, on March 10, 2022, Adams's Segregation Behavior Review form, portions of which are shown below, stated that he was at Stage Four, and would therefore have been allowed one IISP call per month and weekly COVID-19 calls. (*Id.*, PageID.560.)

[Michigan Department of Corrections Segregation Behavior Review form dated 3/10/22 for Prisoner 462766 Adams, Facility AMF, Lock 2-141, Administrative segregation classified 9/9/18, Reason: Serious Threat To Physical Safety Of Others. Housing Unit Team Evaluation shows IISP Stage IV checked, appropriate behavior and attitude with staff and prisoners marked Regularly for both AM and PM officers, housekeeping/personal hygiene marked Adequate (AM) and Good (PM). ARUS/PC: J. Gibson, PC. Date 3/10/22.]

(*Id.*)

In their motion for summary judgment, Defendants argue that, at most, Defendant was at Stage Four of the IISP, and therefore would be allowed a maximum of five phone calls — one IISP call for January, one IISP call for February, and one COVID-19 call for each of the three weeks between January 31, 2022 and February 19, 2022. (ECF No. 46, PageID.482.)

Defendants provide call logs showing that Adams made five phone calls between January 31, 2022, and first shift of February 19, 2022, when Adams alleges that he was denied a phone call. (ECF No. 46-8, PageID.565.)

In his response, Adams says that he was denied his COVID-19 call on February 19, 2022. (ECF No. 48, PageID.576.) Therefore, Adams is alleging that he was denied his one ten-minute COVID-19 phone call. (*Id.*)

6

COVID-19 calls reset on Monday of each week. (ECF No. 46-5, PageID.529-30.) If a prisoner does not use their COVID-19 call one week, it does not roll over to the next week. (*Id.*, PageID.530.) According to Adams's call log, though Adams did make five phone calls between January 31, 2022 and February 19, 2022 (excluding the phone call Adams made on February 19 after CO Sullivan denied Adams a phone call), Adams had not yet used his COVID-19 call for the week of February 13, 2022 – when CO Sullivan allegedly denied him his phone call. (ECF No. 46-8, PageID.565.) The five phone calls Adams made prior to being denied a phone call and the one phone call Adams made after being denied a phone call are shown below:

| **Sunday** | **Monday** | **Tuesday** | **Wednesday** | **Thursday** | **Friday** | **Saturday** |
|---|---|---|---|---|---|---|
| Jan. 30 | Jan. 31 CALL | Feb. 1 CALL CALL | Feb. 2 | Feb. 3 | Feb. 4 | Feb. 5 |
| Feb. 6 | Feb. 7 | Feb. 8 | Feb. 9 | Feb. 10 CALL CALL | Feb. 11 | Feb. 12 |
| Feb. 13 | Feb. 14 | Feb. 15 | Feb. 16 | Feb. 17 | Feb. 18 | Feb. 19 **CALL** |

(*Id.*) So, even though Adams had made five calls prior to February 19, he had not yet made his COVID-19 call for the week of February 13.

Therefore, Adams at some point would have been permitted to make an additional ten-minute COVID-19 call that week. The above chart shows that Adams did receive all his allotted telephone calls. Adams is claiming only that CO Sullivan denied him a ten-minute telephone call during CO Sullivan's shift on February 19. Adams later received that telephone call on February 19. He just did not get to make the telephone call when he first asked to do so that day.

7

Defendant argues that, accepting Adams's assertion as true, <u>the evidence shows that Adams was temporarily denied one ten-minute telephone call</u>. Prisoners retain their First Amendment rights, including their right to communicate with friends or family members over the phone. *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). Generally, the loss of privileges "which includes loss of the right to use the phone, amounts to adverse action." *Jamerson v. Taskila*, No. 2:22-cv-98, 2022 WL 1769085, at *9 (W.D. Mich. June 1, 2022) (dismissing plaintiff's retaliation claim on screening because his complaint failed to allege facts suggesting that Defendants were aware of his prior grievances). However, a prisoner is not entitled to unlimited access to the telephone, and the denial of telephone access on "one isolated occasion clearly did not violate his First Amendment right to reasonable telephone access." *Doyle v. Clark*, No. 1:09-cv-1150, 2010 WL 2540740, at *2 (W.D. Mich. June 15, 2010). A temporary deprivation of the use of a telephone, although frustrating is part of the routine inconvenience of prison life, and "[n]o reasonable trier of fact could find that it was adverse action that would deter a person of ordinary firmness from engaging in protected conduct." *Wymes v. Laughton*, No. 4:21-cv-10700, 2021 WL 3207121, at *2 (E.D. Mich. July 29, 2021).

Therefore, in the opinion of the undersigned, accepting Adams's allegations as true, the denial of a ten-minute telephone call on one isolated occasion, during CO Sullivan's shift, is not capable of deterring a person of ordinary firmness from engaging in the protected conduct and cannot rise to adverse action necessary to

8

support a retaliation claim. *Id.* Accordingly, in the opinion of the undersigned, no genuine issue of material fact exists entitling Defendant to summary judgment.

## V. Qualified Immunity

Alternatively, Defendant argues that he is entitled to dismissal of the complaint against him based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if

either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define

> clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018).

In the opinion of the undersigned, clearly established law does not support Adams's claim that the denial of a ten-minute telephone call on one occasion supports a First Amendment cause of action. Accordingly, it is alternatively recommended that the Court grant CO Sullivan qualified immunity.

## VI. Recommendation

It is respectfully recommended that the Court grant Defendant's motion for summary judgment and dismiss this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 30, 2025                         /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U.S. MAGISTRATE JUDGE